BRONISLAW JARONKO *vs.* FRANCISZEK CZERWINSKI ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 6th—decided May 23d, 1933.

*Ralph O. Wells* and *Martin F. Stempien,* with whom, on the brief, was *William S. Locke,* for the appellant (plaintiff).

*Cyril F. Gaffney,* for the appellees (defendants).

HINMAN, J. The complaint alleged that on January 17th, 1931, the defendant Czerwinski executed to The Polish Investment & Loan Co., Inc., his note for $600 payable $12 per week with a provision that upon default in any one payment the whole amount should become due with attorney's fees or other charges or expenses for collection. The defendants Begay, Tercyak, Duszak, and Pananski and the plaintiff "endorsed the said note" for Czerwinski, who failed to make the payments according to the tenor of the note and the payee exercised its power to demand full payment. Notice of demand was sent to the defendants, but they refused to make payment, and the plaintiff was compelled to pay the note with fees and costs amounting in all to $655.91. Demand of payment from the defendants and refusal, and possession of the note by the plaintiff due and unpaid, were also alleged, and $1000 damages claimed. The printed form signed by the defendants on the back of the note, made part of the complaint, is quoted in a footnote. Begay and Duszak, the only defendants who answered, filed general denials.

The trial court found the making and execution as alleged and that the payee obtained judgment against the several parties which was collected in full from the plaintiff. Each of the first three parties whose signatures appear on the back of the note signed, at the request of Frank Tercyak, a friend of the maker, in the absence of all the other parties to the note and without any express agreement relative to the liability incurred. Duszak affixed his name as the fourth signer, but not in the presence of any of the other parties, and it did not appear at whose request he signed. After these four signatures had been obtained, Tercyak submitted the note to the payee, which refused to accept it unless a fifth indorser was obtained.

Tercyak then took the note to the plaintiff and asked him to sign, and he attached his signature beneath the others. The plaintiff entered into no express agreement with anyone relative to his liability or the mutual rights and liabilities of himself and the other parties. There was no pre-arrangement as to the order in which the parties were to sign; they all signed as an accommodation to the maker, although some of them did not know him. Further findings which are attacked on this appeal are stated hereafter.

The conclusions reached were that while there was no expressed agreement among the parties whose signatures appear on the back of the note as to their respective liabilities, the circumstances created an implied agreement that they should be bound only as guarantors and liable respectively only for a proportionate part of the total, as among themselves, that they should not be liable as indorsers, and therefore that they were liable among themselves for contribution only. The court also held that the form of the complaint did not admit of a judgment in favor of the plaintiff against them for such contribution, and rendered judgment against the named defendant, the maker, only.

"New Britain, Conn.

"For value received I hereby waive demand, protest and notice of protest and non-payment of this note, and guarantee payment of the same, notwithstanding any extensions of time that may be granted the maker in making payments, and I agree also to pay attorney's fees for collection or any other fees, charges and expenses that said The Polish Investment and Loan Co., Inc., may be put to in order to effect collection.

"ENDORSEMENTS,

Charles Begay,
Leon Pananski, also known as Leon Poznanski;
Stefania Tercyak,
Stanislaw Duszak,
Bronislaw Jaronko."

The appellant assigns error as to certain portions of the finding, the conclusions, and in overruling claims of law that the defendants, other than the maker, and the plaintiff were accommodation indorsers, respectively liable, in the order in which they indorsed, to the plaintiff for the full amount which he had been required to pay; also, that even if they were merely co-guarantors, the plaintiff was entitled under the complaint to a judgment against each of the others for contribution of a proportionate part of the amount.

Attack is made, as being without evidential support, upon findings to the effect that the three parties whose signatures appear first on the back of the note, and the plaintiff, each signed under circumstances which would lead him to believe that he was becoming a joint guarantor binding himself only for a proportionate part of the amount of the note, that none of them attached any significance to the order in which their signatures were affixed, there was no reliance by subsequent signers upon the responsibility of those preceding, and none of them agreed to be liable to the succeeding signers for the full amount. The only direct testimony as to the circumstances under which the signatures were obtained is that of Tercyak and is merely that he took the note to the first three in succession (the circumstances of Duszak's signing do not appear) and later to the plaintiff, asked each to sign, and he did so. It does not appear that anything was said as to other signatures or the obligation which the signer was assuming. Therefore, if the questioned findings can be justified, it must be from the wording of the undertaking itself and permissible inferences from these scanty circumstances attending or pertaining to the signing. "A person placing his signature upon an instrument otherwise than as a maker, drawer or acceptor is deemed to be an indorser, unless he clearly

indicates by appropriate words his intention to be bound in some other capacity." General Statutes, § 4380. "As respects one another, indorsers are liable prima facie in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise." General Statutes, § 4385. This section applies to accommodation indorsers who indorse before delivery to the payee. Brannan's Negotiable Instruments Law, Annotated (5th Ed.) pp. 716, 759-764; *Donnelly* v. *Garvan,* 111 Conn. 626, 631, 151 Atl. 168.

The only language in the printed form signed by the parties which might be taken as evidencing an intention to be bound in any other capacity than as indorsers is "I hereby . . . guarantee payment," but this may as well have been used as the equivalent of engaging that on due presentment the note shall be accepted or paid and if it be dishonored the signer will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay—which is the undertaking of an indorser. General Statutes, § 4383. The waiver of demand, protest and notice is not inconsistent with the liability as indorser. Mere guarantors are not entitled to such notice. 2 Daniel, Negotiable Instruments (6th Ed.) § 1754. Signers of a guaranty of payment with a waiver of presentment, protest and notice of dishonor have been held in numerous cases to be indorsers with an enlarged liability. *First National Bank* v. *Baldwin,* 100 Neb. 25, 158 N.W. 371; *Toler* v. *Sanders,* 77 W. Va. 398, 87 S.E. 462; *German-American Savings Bank* v. *Hanna,* 124 Iowa, 374, 100 N.W. 57; *Jones County Trust & Savings Bank* v. *Kurt,* 192 Iowa, 965, 182 N.W. 409; *Hutson* v. *Rankin,* 36 Idaho, 169, 213 Pac. 345; 33 A.L.R. 91; 21 A.L.R. 1375; 46 A.L.R. 1516; Brannan's Negotiable Instruments Law, Annotated (5th Ed.) pp. 425, 445.

The liability of a guarantor differs from that of an indorser in that the latter contracts to be liable only upon condition of presentment on the exact day of maturity and due notice of dishonor, and is discharged by failure in either particular, although he may suffer no actual damage, while a guarantor is bound to pay the amount upon presentment made and notice to him of dishonor within a reasonable time. Also, in the event of failure to make presentment and give notice within such reasonable time, the guarantor is not entirely discharged from liability but only to the extent that he may have sustained loss or injury by the delay. "The same person may be guarantor, and also indorser of a note; and in such case, while failure to give him due notice of demand and nonpayment will discharge him as indorser, he will still be bound as guarantor." 2 Daniel, Negotiable Instruments (6th Ed.) § 1754; *Toler* v. *Sanders, supra; Loomis Institute* v. *Hurd,* 57 Conn. 435, 18 Atl. 669.

The terms of the undertaking signed by the present parties do not indicate otherwise than that the predominant intent was to assume the obligations incident to an ordinary indorsement. The situation was quite different in *Beardsley* v. *Hawes,* 71 Conn. 39, 40, 40 Atl. 1043, where the defendants' contract was clearly and only one of guaranty, as also was the case in *Edgerly* v. *Lawson,* 176 Mass. 551, 57 N.E. 1020.

Under the negotiable instruments statutes, as at common law, "in the absence of an agreement to the contrary, as between themselves, successive accommodation parties are liable in the order in which their names appear, even though later signers knew that prior parties signed for accommodation." *Davis* v. *Solomon,* 101 Conn. 465, 468, 126 Atl. 724; General Statutes, § 4385; *Kirschner* v. *Conklin,* 40 Conn. 77;

*Noble* v. *Beeman-Spaulding-Woodward Co.*, 65 Ore. 93, 131 Pac. 1006, 46 L. R. A. (N. S.) 162; note, 28 L. R. A. (N. S.) 1040; 8 C. J. p. 289. However, such parties may specially agree that they are to be liable jointly as cosureties and not severally, in which case there is a right to and duty of contribution among them. Such an agreement may be proved by parol or inferred from the circumstances of the case. *Talcott* v. *Cogswell*, 3 Day, 512; *Currier* v. *Fellows*, 27 N. H. 366; 8 C. J. 291; *Holston* v. *Haley*, 125 Me. 485, 135 Atl. 98. In *Talcott* v. *Cogswell* the court was of opinion that the fact that each of two indorsers had paid half of the amount of the note furnished sufficient evidence that the indorsement was joint. In *Hagerthy* v. *Phillips*, 83 Me. 336, 22 Atl. 223, where each of three indorsers signed separately, with the understanding that the other two would do so and that the note would not be used until signed by all, a jury finding that they assumed a joint liability, involving contribution, was sustained. It was there stated, however (p. 337), that the evidence of an agreement to be jointly instead of successively liable "should be clear and satisfactory, . . . the note is itself strong evidence that it represents the contract correctly." In *Holston* v. *Haley, supra,* it was held that the facts that all indorsers of a note of a farmers' mutual benefit corporation given to obtain operating funds were directors of the corporation and so engaged in a common enterprise, and that the indorsements were for the sole purpose of furthering that enterprise, warranted a conclusion that their indorsements were joint and not successive.

Most of the instances in which an agreement to be jointly liable has been inferred have resembled *Holston* v. *Haley* in that the indorsers were stockholders in a corporation which was the maker of the note, given to

raise money for corporate purposes. *Weeks* v. *Parsons,* 176 Mass. 570, 58 N.E. 157; *Trego* v. *Estate of Cunningham,* 267 Ill. 367, 378, 108 N.E. 350; *Strasburger* v. *Myer Strasburger & Co., Inc.,* 152 N. Y. Sup. 757; *Hurlbut* v. *Quigley,* 180 Cal. 265, 180 Pac. 613; *Lee* v. *Boykin,* 114 S. C. 480, 103 S.E. 777, 11 A.L.R. 1328, and note, p. 1332 *et seq.* We have found no case in which an agreement for joint liability has been found from circumstances no more significant than those disclosed by the record in the present case. The facts appear, rather, to render applicable the reasoning in *Kirschner* v. *Conklin, supra,* p. 82, leading to a conclusion that there was no joint undertaking: "The plaintiff and defendant might have become joint indorsers if they had been disposed. Their promise might have been a joint one, but they saw fit to indorse the note separately and successively in the usual mode. No communication took place between them which varies the legal liabilities such indorsements are known to create. The claim of the defendant is based upon the bare fact that these parties knew each other to be accommodation indorsers; but this fact falls far short of being sufficient to create an agreement between them to be jointly liable. Such knowledge is just as consistent with the theory of a separate undertaking, as it is with that of a joint liability." It does not even appear that, when each of the present defendants signed, he knew that there were to be subsequent signers, or, if there were, how many there would be. The plaintiff—the last signatory—was the only party in a position to have knowledge as to the full number of signers, yet he alleged in his complaint that these defendants were indorsers and brought his action in a form adapted to recovery upon a successive liability as such instead of for contribution, by each, of his share

of a joint obligation. See Form 93, Practice Book, p. 362.

We are unable to find essential support, either direct or inferential, for the findings that the plaintiff and the defendants each signed under circumstances leading him to believe that he was binding himself only as a joint guarantor and for a proportionate part of the note. The conclusions to the same effect, being dependent upon these findings, must fall with them. In the absence of a proven agreement for joint liability, the defendants must be assumed to have contracted in contemplation of, and accordance with, the statutory rule of successive liability. General Statutes, § 4385. "This doctrine rests upon very clear and satisfactory principles. Each indorser places his name upon the instrument, whether for accommodation or otherwise, knowing that he renders himself conditionally liable to every subsequent and successive indorsee; and that he has his recourse against every antecedent party, for the whole amount which he may be obliged to pay. With such knowledge of his liabilities and his remedies he voluntarily assumes his relation to the instrument with others who assume a different relation, accompanied by increased or diminished risk of loss. And contribution does not arise between such successive indorsers for the accommodation of another party by operation of law, but only when established by special agreement." 1 Daniel, Negotiable Instruments (6th Ed.) § 703, p. 783. The trial court was in error in holding otherwise.

For reasons which we have already indicated, the ruling was correct that the form of the complaint was not adapted to a judgment for contribution by the defendants, although, as was intimated in the memorandum of decision, it would have been susceptible to amendment appropriate to the alternative claim of

joint liability and remedy by way of contribution which was advanced upon the trial.

There is error and a new trial is ordered.

In this opinion the other judges concurred.